1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JOHN DOE,                                Case No.  1:25-cv-00333-JLT-HBK (HC)

12                     Petitioner,             FINDINGS AND RECOMMENDATIONS TO
                                               GRANT RESPONDENT'S MOTION TO
13            v.                               DISMISS[2]

14    TONYA ANDREWS, Facility                  (Doc. No.  10)
      Administrator of Golden State Annex
15    Detention Facility,[1]
                                               FOURTEEN-DAY OBJECTION PERIOD
16                     Respondents.

17

18            Petitioner John Doe, an immigration detainee in U.S. Immigration Customs and

19    Enforcement (ICE) custody at the Golden State Annex Detention Facility in McFarland,

20    California, initiated this action by filing, with counsel, a petition for writ of habeas corpus under

21    28 U.S.C. § 2241.  (Doc. No. 1, "Petition").  The Petition raises the following claim for relief:

22    _____

23    [1] Respondent moves to strike and dismiss all unlawfully named officials under § 2241.  (Doc. No. 10 at 1
      n.2).  The proper respondent in habeas cases is the "warden of the facility where the prisoner is held, not
24    the Attorney General or some other remote supervisory official."  *Rumsfeld v. Padilla*, 542 U.S. 426, 430
      (2004).  As recently held by the Ninth Circuit, in § 2241 cases filed by immigrant detainees, the proper
25    respondent is the warden of the private detention facility.  *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir.
      2024). The undersigned will recommend the district court grant Respondent's motion to dismiss all
26    unlawfully named officials and recognize the proper respondent as the Facility Administrator of
      Petitioner's detention facility, the Golden State Annex Detention Facility.
27    [2] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
      (E.D. Cal. 2022).

28

1   Petitioner's continued detention in ICE custody without a bond hearing violates his Fifth

2   Amendment due process rights.  (*Id*. at 17-25).  As relief, Petitioner asks the Court to issue a

3   declaration that his "ongoing prolonged detention" violates his due process rights; issue a writ of

4   habeas corpus and order Respondent to schedule a bond hearing before an immigration judge

5   ("IJ") where the Government must establish by clear and convincing evidence that Petitioner

6   presents a risk of flight or danger; and award reasonable attorney fees under the Equal Access to

7   Justice Act (EAJA).  (*Id*. at 25-26).

8        In response, Respondent filed a Motion to Dismiss ("Motion") arguing the Petitioner is

9   subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii); thus, "both

10  constitutionally and as a matter of law," because his detention "continues to serve legitimate

11  congressionally mandated goals with a definite end in sight."  (Doc. No. 10 (citing *Demore v.*

12  *Kim*, 538 U.S. 510 (2003); *Keo v. Warden of the Mesa Verde ICE Processing Ctr*., 2025 WL

13  1029392, at *1 (E.D. Cal. Apr. 7, 2025), *appeal dismissed sub nom. Keo v. Warden*, 2025 WL

14  2528945 (9th Cir. June 27, 2025)).  Petitioner filed an opposition to the Motion to Dismiss

15  arguing neither *Demore* nor *Keo* preclude his as-applied challenge to his "prolonged detention,"

16  and restating his argument in the Petition that after applying the factors in *Mathews v. Eldridge,[3]*

17  his continued detention without a bond hearing violates his procedural due process rights under

18  the Fifth Amendment.

19       On June 12, 2025, the Court directed the parties to submit supplemental briefing

20  addressing whether Petitioner's due process rights, including any right to a bond hearing, as an

21  "arriving alien" detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), extend beyond the rights

22  provided by statute.  (Doc. No. 16 (citing Supreme Court cases *Shaughnessy v. United States ex*

23  *rel. Mezei*, 345 U.S. 206, 208 (1953) and *Dept. of Homeland Security v. Thuraissigiam*, 591 U.S.

24  103 (2020)). Petitioner responds *Thuraissigiam* and *Mezei* "do not limit Petitioner's right to

25  challenge his detention to INA procedures" and separately argued that "nothing in the statute

26  entitles Petitioner to any procedure to seek independent review of the reasonableness of his

27

28  [3] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

2

detention." (Doc. No. 17 at 4, 10). Respondent generally responds, "the legislative text underlying § 1225(b) is fully sufficient to address due process concerns for prolonged detention." (Doc. No. 18 at 3 (citing 8 U.S.C. § 1182(d)(5)(A) (noting the Secretary of Homeland Security may temporarily parole into the United States "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States"); 8 C.F.R. §§ 212.5(b), 235.3 (2017)).

Significant is Petitioner's status and detention under § 1225(b)(1) as an "arriving alien" who has not yet been admitted to the United States and because he was denied discretionary parole pending final adjudication of his asylum application. Given his status the undersigned recommends the district court grant Respondent's Motion to Dismiss and dismiss the Petition for the reasons set forth below.

## I.    BACKGROUND

Petitioner is a native and citizen of Belize. (Doc. No. 10-1, Exh. 1). He entered the United States without inspection, and July 1, 2024, and was encountered by Customs and Border Protection ("CBP") officers approximately 10 miles east of Tecate, Mexico and 75 yards north of the United States Border. (*Id.* at 2-3, Exh. 1). Petitioner indicated that he did not possess any legal documents allowing him to legally enter or remain in the United States. (Doc. No. 10-1 at Exh. 1). On July 2, 2024, CBP officers placed Petitioner in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1)(A)(i) and referred him to an asylum officer for a credible fear interview after he claimed fear of returning to Belize. (Doc. No. 10-1 at 3; Doc. No. 1 at 8). After credible fear interviews with an asylum officer on August 1 and August 7, 2024, the asylum officer found Petitioner to have a "credible fear of torture" if he was returned to Belize. (Doc. No. 1-1 at 2 ¶ 4). On August 14, 2024, U.S. Citizenship and Immigration Services ("USCIS") issued a Notice to Appear that (1) vacated the Order of Expedited Removal pursuant to 8 C.F.R. § 208.30, (2) charged Petitioner with removability under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I) (alien without valid entry documents) and § 212(a)(6)(A)(i) (alien entry without inspection), and (3) ordered Petitioner to appear before an Immigration Judge ("IJ"). (Doc. No. 10-1 at 3, Exh. 3; Doc. No. 1 at 8-9; Doc. No. 1-1 at 2-3 ¶ 5). Petitioner claims he

asked the IJ during a master calendar on August 26, 2024 if he was eligible for a bond hearing, and his request was denied "on the basis that she lacked statutory authority to hold a bond hearing for him."[4]  (Doc. No. 1-1 at 3 ¶ 6 (also noting Petitioner was advised to submit a request for discretionary parole to ICE)).  In November 2024, Petitioner submitted a request for parole to the ICE deportation officer assigned to his case, and on January 15, 2025, he received an Interim Notice Declining Parole "at [the] time" because Petitioner did not establish, he was not a flight risk, and did not establish he was not a security risk or a danger to the community.  (Doc. No. 1-1 at 3 ¶ 8-9; *see also* Doc. No. 10-1 at 4 ¶ 15, Exhs. 9, 10).

Respondent attests that Petitioner appeared at master calendar hearings, sometimes with his attorney, and requested extensions of time "to prepare his applications for relief" on August 26, 2024, October 16, 2024, December 11, 2024, and January 22, 2025.  (Doc. No. 10-1 at 3, Exhs. 4-7).  On February 26, 2025, the IJ set the matter for a merits hearing on Petitioner's requests for relief on April 22, 2025.  (*Id*. at 3 ¶ 14, Exh. 8).[5]

Petitioner is currently detained in ICE custody under the mandatory detention provisions in § 235(b) of the Immigration and Nationality Act ("INA") and 8 U.S.C. 8 U.S.C. § 1225(b)(1)(B)(ii), and he is being held at the Golden State Annex ICE Processing Facility in MacFarland, California.  (*See id*. at 3 ¶ 9; Doc. No. 1 at 4 ¶ 8).

## II.    APPLICABLE LAW AND ANALYSIS

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition.  R. Governing 2254 Cases 4.  The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent."  A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to

---

[4] In Matter of M-S-, the AG interpreted 8 U.S.C. § 1225(b)(1)(B)(ii) to require mandatory detention without bond hearings for asylum seekers who were initially subject to expedited removal but later transferred to full removal proceedings after establishing a credible fear. *Id*. at 515–17. Under Matter of M-S-, the only possibility for release available to noncitizens in this category is a discretionary grant of parole by DHS for "urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5). *Id*. at 516–17. Matter of M-S-, 27 I. & N. Dec. 509 (AG 2019).

[5] No where in the supplemental briefing has either party indicated that Petitioner's status has changed.

1    dismiss under Rule 4 of the Rules Governing Section 2254 Cases.  *O'Bremski v. Maass*, 915 F.2d

2    418, 420 (9th Cir. 1990).  Under Rule 4, a district court must dismiss a habeas petition if it

3    "plainly appears" that the petitioner is not entitled to relief.  *See Valdez v. Montgomery*, 918 F.3d

4    687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

5        **A.  Jurisdiction**

6        A district court may grant a writ of habeas corpus when the petitioner "is in custody in

7    violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  As

8    pertinent here, "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas

9    challenges to immigration detention that are sufficiently independent of the merits of [a] removal

10   order."  *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638

11   F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

12       **B.  Mandatory Detention under 8 U.S.C. § 1225(b)(1)(B)(ii)**

13       Title 8 U.S.C. § 1225 applies to "applicants for admission," – noncitizens who "arrive[] in

14   the United States," or are "present" in the United States but have "not been admitted."  8 U.S.C. §

15   1225(a)(1).  "Arriving alien means an applicant for admission coming or attempting to come into

16   the United States at a port-of-entry, or … an alien interdicted … and brought in to the United

17   States by any means."  8 C.F.R. § 1.2; *see also* 69 Fed. Reg. 48,877 (Aug. 11, 2004) (authorizing

18   the application of expedited removal to those "encountered within 14 days of entry without

19   inspection and within 100 air miles of any U.S. international land border.").  "Applicants for

20   admission must 'be inspected by immigration officers' to ensure that they may be admitted into

21   the country consistent with U.S. immigration law."  *Jennings*, 583 U.S. at 287 (quoting §

22   1225(a)(3)).  Once "an immigration officer determines" that an arriving alien "is inadmissible,"

23   "the officer [must] order the alien removed from the United States without further hearing or

24   review."  § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7).

25       However, if an applicant "indicates either an intention to apply for asylum … or a fear of

26   persecution," the immigration officer "shall refer the alien for an interview by an asylum officer."

27   8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii).  If the asylum officer finds the applicant has a credible fear of

28   persecution, the applicant "shall be detained for further consideration of the application for

1  asylum;" and if the officer determines there is no credible fear of persecution, the officer "shall

2  order the alien removed from the United States without further hearing or review."  8 U.S.C. §

3  1225(b)(1)(B)(ii), (iii)(I), (IV) ("alien subject to the procedures under this clause shall be detained

4  pending a final determination of credible fear of persecution and, if found to not have such a fear,

5  until removed."). "[A]pplicants for admission may be temporarily released on parole 'for urgent

6  humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C.

7  § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)); *see also* 8 C.F.R. § 212.5(a)

8  (parole requests are considered by designated officials including ICE "directors of field

9  operations").  Thus, as explained by the Supreme Court in *Jennings v. Rodriguez*,

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) … mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

15  583 U.S. at 297; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1168

16  (W.D. Wash. 2023) ("The Attorney General [has] interpreted 8 U.S.C. § 1225(b)(1)(B)(ii) to

17  require mandatory detention without bond hearings for asylum seekers who were initially subject

18  to expedited removal but later transferred to full removal proceedings after establishing a credible

19  fear.") (citing *Matter of M-S-*, 27 I. & N. Dec. 509, 515-17 (2019)).[6]

20      At the time the instant Petition was filed in March 2025, Petitioner had been detained for

21  more than 8 months.  (Doc. No. 1 at 2).  It is undisputed that Petitioner entered the United States

22  between ports of entry, without inspection, and was "issued an Expedited Removal Order

23  pursuant to 8 U.S.C. § 1225(b)(1)(A)(i), which applies to noncitizens who cross a land border

24  without inspection and are arrested within 100 miles of the border within two weeks of their

25  arrival."  (Doc. No. 1 at 8).  It is further undisputed that Petitioner was found to have a credible

26  fear of persecution and is therefore subject to mandatory detention under 8 U.S.C. §

27  
28  

---

[6] There is ongoing class action litigation asserting a due process right to a bond hearing for individuals who enter without inspection and then demonstrate a credible fear of deportation.  *See Padilla v. ICE*, No. 2:18-cv-00928-MJP (W.D. Wash.), appeal pending Case No. 24-2801 (9th Cir.) (argument in May 2025).

1225(b)(1)(B)(ii) for further consideration of his application for asylum.  *See Jennings*, 583 U.S. at 297.  Thus, Petitioner is not <u>statutorily</u> entitled to a bond hearing.  *Id.*  However, Petitioner does not dispute the grounds for his mandatory detention; rather, he contends that his prolonged detention without a bond hearing violates his Fifth Amendment due process rights.  (Doc. No. 1 at 15-25).

### C.  Due Process for "Arriving Aliens" Detained under § 1225(b)(1)

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law."  Further, it is "well-established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 305 (1993*); Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("this Court has held that the Due Process Clause protects an alien subject to a final order of deportation"). However, the Supreme Court has repeatedly underscored that "[d]etention during removal proceedings is a constitutionally permissible part of that process."  *Demore*, 538 U.S. at 513 ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules as to aliens that would be unacceptable if applied to citizens."); *see also Zadvydas*, 533 U.S. 718 (Kennedy, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens."); *Carlson v. Landon*, 342 U.S. 524, 538 ("Detention is necessarily a part of this deportation procedure.  Otherwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings.").

Nonetheless, the Supreme Court has repeatedly acknowledged that "the nature of protection [under the Due Process clause] may vary depending on [immigration] status and circumstance."  *Zadvydas*, 522 U.S. at 694 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former

1    category who are merely 'on the threshold of initial entry.'"); *Landon v. Plasencia*, 459 U.S. 21,

2    32 (1982) (collecting cases) ("[A]n alien seeking initial admission to the United States requests a

3    privilege and has no constitutional rights regarding his application ... [H]owever, once an alien

4    gains admission to our country and begins to develop the ties that go with permanent residence,

5    his constitutional status changes accordingly."); *Nishimura Ekiu v. United States*, 142 U.S. 651,

6    660 (1892) ("As to [those who have never been naturalized, nor acquired any domicile or

7    residence within the United States, nor even been admitted  into the country pursuant to law], the

8    decisions of executive or administrative officers, acting within powers expressly conferred by

9    congress, are due process of law").  For example, in *Shaughnessy v. United States ex rel. Mezei*,

10   the arriving alien petitioner lived lawfully in the United States for over twenty years, at which

11   point he left the United States for 19 months.  345 U.S. 206, 208 (1953).  Upon his return, he was

12   "permanently excluded from the United States on security grounds but stranded [] on Ellis Island

13   because other countries will not take him back.  The issue is whether the Attorney General's

14   continued exclusion of respondent without a hearing amounts to an unlawful detention, so that

15   courts may admit him temporarily to the United States on bond until arrangements are made for

16   his departure."  *Id*. at 207.  The Supreme Court found Mezei's continued exclusion did not

17   deprive him of any statutory or constitutional right, emphasizing that "aliens who have once

18   passed through our gates, even illegally, may be expelled only after proceedings conforming to

19   traditional standards of fairness encompassed in due process of law.  But an alien on the threshold

20   of initial entry stands on a different footing: 'Whatever the procedure is authorized by Congress

21   is, it is due process as far as an alien denied entry is concerned.'"  345 U.S. at 212 (citing *Knauff*

22   *v. Shaughnessy*, 338 U.S. 537, 544 (1950)).

23         In *Dep't of Homeland Sec. v. Thuraissigiam*, the arriving alien petitioner attempted to

24   enter the country illegally and was apprehended  25 yards from the border.  591 U.S. 103, 106

25   (2020).  He was detained for expedited removal proceedings pursuant to § 1225(b)(1) and was

26   never released from custody.  *Id*. at 114.  After his request for asylum was denied, he filed a

27   federal habeas petition, requesting "a writ of habeas corpus, an injunction, or a writ of mandamus

28   directing [the Department] to provide [him] a new opportunity to apply for asylum and other

8

applicable forms of relief." *Id.* at 115 (alterations in original). The Supreme Court found the Due Process Clause did not require a review of the decision denying him asylum and reaffirmed that "an alien in [Thuraissigiam's] position has only those rights regarding admission that Congress has provided by statute." *Id*. at 140; *see also Mendoza-Linares v. Garland*, 51 F.4th 1146, 1148 (9th Cir. 2022) ( "arriving immigrant caught at the border" had no constitutional rights regarding his application for asylum, as "any rights [petitioner] may have in regard to removal or admission are purely statutory in nature and are not derived from, or protected by, the Constitution's Due Process Clause.").

Following this decision, selected United States district courts have relied on *Thuraissigiam, Mezei,* and the preceding line of Supreme Court cases to find noncitizens subject to mandatory detention under § 1225(b) are not statutorily entitled to bond hearings, and lack any due process rights beyond those authorized by the statute. *See, e.g., Mendoza-Linares v. Garland*, 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024) (finding "Supreme Court and Ninth Circuit precedents are clear that Petitioner [detained pursuant to § 1225(b)(1)(B)(ii)] lacks any rights beyond those conferred by statute, and no statute entitles Petitioner to a bond hearing."); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 669 (S.D. Tex. 2021) ("When a noncitizen attempts to unlawfully cross the border as Petitioner did, his constitutional right to due process does not extend beyond the rights provided by statute."); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 336 (W.D.N.Y. 2021) ("Petitioner is on the threshold of initial entry into the United States and [] he accordingly is not entitled to procedural protections beyond those provided by statute."); *Bataineh v. Lundren*, 2020 WL 3572597, at *9 (D. Kan. July 1, 2020) ("if Petitioner is an 'arriving alien' detained under § 1225(b) he is not entitled to a bond hearing"); *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202 (D. N.M. Mar. 24, 2020) ("Petitioner's detention will end either when the government grants her asylum or when it removes her, and Petitioner identifies no [] Supreme Court case holding that such detention violates the Due Process Clause"); *de la Rosa Espinoza v. Guadian*, 2020 WL 3452967, at *8 (D. Kan. June 24, 2020); D.*A.V.V. v. Warden, Irwin County Detention Ctr.*, 2020 WL 13240240, at *5-6 (M.D. Ga. Dec. 7, 2020) (noting "pronouncements [in *Thuraissigiam*] as to arriving aliens' due process rights, [] are broad and

would appear to extend to the detention context" and finding "because the INA does not provide

arriving aliens the right to bond, Petitioner has no independent procedural due process right to a

bond hearing."); *Romero v. Bondi*, 2025 WL 2490659, at *3 (E.D. Va. July 2, 2025) (finding

Petitioner failed to state a claim for relief because § 1225(b)(1) mandates detention until an

immigration officer finishes considering the application for asylum); *Poonjani v. Shanahan*, 319

F. Supp. 3d 644, 650 (S.D.N.Y. 2018) ("Accordingly, because the statutory language makes clear

that aliens detained pursuant to Section 1225(b)(1)(A) have no statutory entitlement to bond

hearings, and because *Mezei* instructs that, for aliens on the threshold of initial entry, the

Constitution extends no farther than statutory language itself, *Mezei* compels the conclusion that

Petitioner's due process rights have not been infringed.").

   Petitioner acknowledges in his supplemental briefing that the "Court has long interpreted

'the Constitution [to] give[] 'the political department of the government' plenary authority to

decide which [noncitizens] to admit … and a concomitant of that power is the power to set the

procedures to be followed in determining whether a[] [noncitizen] should be admitted." (Doc.

No. 17 at 3-4 (internal citations omitted)).  However, Petitioner argues *Thuraissigiam* is

distinguishable from the instant case because the petitioner challenged his negative credible fear

determination and the remedy sought was a "new opportunity to apply for asylum," and *Mezei* is

distinguishable because the petitioner was challenging a final order of exclusion from the United

States as threat to national security; whereas here, the Petitioner is claiming his due process rights

are violated by unreasonably prolonged detention without a bond hearing.  (*Id*. at 4-6)  Thus,

Petitioner asks that the Court ascribe to the "majority position" of district courts in the Ninth

Circuit that "interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to

*admission*, rather than limiting that person's ability to challenge *detention*."  *Gao v. Larose*, 2025

WL 2770633, at (S.D. Cal. Sept. 26, 2025) (emphasis in original) (collecting cases); *see also*

*Padilla v. ICE*, 704 F. Supp. 3d 1163, 1171–72 (W.D. Wash. 2023) ("The holding in

*Thuraissigiam* does not foreclose Plaintiffs' due process claims which seek to vindicate a right to

a bond hearing with certain procedural protections."); *Jatta v. Clark*, 2020 WL 7138006, at *2

(W.D. Wash. Dec. 5, 2020) (holding "there is nothing in the Supreme Court's opinion in

*Thuraissigiam* that suggests the writ cannot apply to [petitioner's] challenge to what he claims is an unlawful detention"); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) (distinguishing *Mezei* and "join[ing] the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Hernandez v. Wofford*, 2025 WL 2420390, at *3 (E.D. Cal. Aug. 21, 2025); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever.").

Petitioner also attempts to analogize the Supreme Court's finding in *Zadvydas v. Davis* that "that the plenary power 'is subject to important constitutional limitations'" and "does not apply where a noncitizen challenges 'an indefinite term of imprisonment within the United States,'" to the instant case, "where Petitioner alleges that Respondents have unlawfully detained him without a hearing, and that his detention will continue for months or years." (Doc. No. 17 at 6 (citing 533 U.S. at 695)).

This argument is unavailing. As discussed below, *Zadvydas* addressed the "potentially permanent" confinement under 8 U.S.C. § 1231(a)(6) of noncitizens who had been admitted to the United States and were later ordered removed, but their removal could not be effectuated, for example, because their country refused to accept them. 533 U.S. at 691 ("[T]he issue we face is whether aliens that the [g]overnment finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States."). In *Jennings*, the Supreme Court methodically distinguished "the provision in question in *Zadvydas*, § 1231(a)(6), [as it] differs materially from those that in issue here, §§ 1225(b)(1) and (b)(2)" because (1) §§ 1225(b)(1) and (b)(2) mandate detention for a specified period of time, while Congress "left the permissible length of detention under § 1231(a)(6) unclear," (2) in *Zadvydas* the Court saw ambiguity in the use of "may" in § 1231(a)(6), as opposed to §§ 1225(b)(1) and (b)(2)'s "unequivocal[] mandate that aliens falling within their scope 'shall' be detained," and (3) "there is a specific provision authorizing release from § 1225(b) detention whereas no similar release provision applies to §

1231(a)(6)." 583 U.S. at 299-300. Moreover, in *Zadvydas* the Court distinguished *Mezei*, finding

a "critical" distinction between noncitizens admitted to the United States and subsequently

ordered removed pursuant to § 1231(a)(6), and those, as Petitioner here, on the threshold of entry

as an arriving alien detained under § 1225(b)(1). *See* 533 U.S. at 692-93 (explaining that an

alien's treatment "as if stopped at the border" has historically been held sufficient to justify

potentially indefinite detention). Based on the foregoing, the Court finds *Zadvydas* is of limited

relevance in considering whether Petitioner has due process rights to a bond hearing as that right

is not explicitly conferred by § 1225(b)(1). *See Jennings*, 583 U.S. at 297 ("neither § 1225(b)(1)

nor § 1225(b)(2) says anything whatsoever about bond hearings").

After thorough review of the unequivocal statutory text of § 1225(b)(1) and relevant

Supreme Court precedents, the Court is inclined to agree with district courts finding that pursuant

to *Thuraissigiam* and preceding Supreme Court precedent, Petitioner's rights as an arriving alien

apprehended shortly after his unlawful entry into this country and now held under mandatory

detention pursuant to § 1225(b)(1)(B)(ii) is limited to those rights authorized by statute, and as

such, Petitioner has no separate due process right to a bond hearing. In considering this issue the

Court emphasizes that "*Mezei* and its progeny do not hold that Petitioner has no due-process

rights; rather, the applicable statutory process shapes [his] procedural due-process rights.

Because Petitioner has no statutory right to release or a bond hearing, [he] has no due process

right to the relief requested." *Gonzalez Aguilar*, 448 F. Supp. At 1212 (citing *Jennings*, 583 at

297 ("nothing in the statutory text imposes any limit on the length of detention. And neither §

1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.")).

Regardless, in light of district courts' split on this issue, and the lack of binding authority

from the Supreme Court and Ninth Circuit specifically as to whether *Thuraissigiam* and *Mezei*

foreclose a claim that "prolonged" detention of an arriving alien under § 1225(b)(1) without an

individualized bond hearing violates due process because it is not a right authorized by the

statute, the Court proceeds to consider whether Petitioner's arguably "less robust due-process

protection" as an arriving alien has been violated as-applied in this instance. *Jamal A. v.

Whitaker*, 358 F. Supp. 3d 853 (D. Minn. Jan. 22, 2019) ("The Court is inclined to agree with the

1   government that arriving aliens detained under § 1225(b)(2)(A) receive less robust due-

2   process protection than criminal aliens detained under § 1226(c).") (collecting cases).

3          **D.  Detention under § 1225(b)(1) without a Bond Hearing**

4          As relevant here, "[i]n a series of decisions since 2001, 'the Supreme Court and [the Ninth

5   Circuit] have grappled in piece-meal fashion with whether the various detention statutes may

6   authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a

7   bond hearing.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1114 (9th Cir. 2010); *see also Rodriguez*

8   *Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022) (observing that "it remains

9   undetermined whether the Due Process Clause requires additional bond procedures under *any*

10  immigration detention statute," and noting that both the Ninth Circuit "and the Supreme Court

11  have repeatedly declined to decide constitutional challenges to bond hearing procedures in the

12  immigration detention context, whether the claims were brought by an alien under § 1226(a) or

13  another provision.").  As discussed above, the pertinent line of authority starts with *Zadvydas v.*

14  *Davis*, 533 U.S. 678 (2001), wherein the Supreme Court addressed a challenge to prolonged

15  detention under 8 U.S.C. § 1231(a)(6) by noncitizens who "had been ordered removed by the

16  government and all administrative and judicial review was exhausted, but their removal could not

17  be effectuated because their designated countries either refused to accept them or the United

18  States lacked a repatriation treaty with the receiving country."  *Prieto-Romero*, 534 F.3d at 1062

19  (citing *Zadvydas*, 533 U.S. at 684-86).  The Court held that detention under § 1231(a)(6) is

20  limited to a presumptively reasonable period of six months, after which a noncitizen was entitled

21  to release if "it has been determined that there is no significant likelihood of removal in the

22  reasonably foreseeable future."  *Id*. at 701.  However, as relevant here, the Supreme Court in

23  *Jennings* later distinguished "*Zadvydas's* interpretation of § 1231(a)(6)" from detention under §

24  1225(b)(1) and (b)(2) because "while *Zadvydas* found § 1231(a)(6) to be ambiguous, the same

25  cannot be said of §§ 1225(b)(1) and (b)(2): Both provisions <u>mandate</u> <u>detention</u> until a certain

26  point and <u>authorize</u> <u>release</u> prior to that point <u>only</u> <u>under</u> <u>limited</u> <u>circumstances</u>."  *Jennings*, 583

27  U.S. 301 (emphasis added).

28         In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a facial due process

1    challenge to mandatory detention of a lawful permanent resident under 8 U.S.C. § 1226(c), and

2    distinguished *Zadvydas* because mandatory detention under 8 U.S.C. § 1226(c) has a "definite

3    termination point" when a decision is made regarding the alien's removability. *Id*. at 529. Justice

4    Kennedy concurred with the decision, thereby creating the majority, but noted "since the Due

5    Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such

6    as respondent could be entitled to an individualized determination as to his risk of flight and

7    dangerousness if the continued detention became unreasonable or unjustified." (*Id*. at 532)

8    (Kennedy, J., concurring).

9        In 2015, the Ninth Circuit applied the canon of constitutional avoidance to hold that for

10   noncitizens detained under 8 U.S.C. §§§ 1225(b), 1226(a), and 1226(c), "the government must

11   provide periodic bond hearings every six months so that noncitizens may challenge their

12   continued detention." *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015). However, in

13   *Jennings v. Rodriguez*, the Supreme Court found the Ninth Circuit misapplied the canon of

14   constitutional avoidance and the "implicit 6-month time limit on the length of mandatory

15   detention" under § 1225(b) and § 1226(c) "falls far short of a 'plausible statutory construction.'"

16   583 U.S. at 296-97, 303-04. As noted *supra*, the Court interpreted § 1225(b)(1) and (b)(2) to

17   "provide for detention for a specified period of time" – to wit – "until certain proceedings have

18   concluded. Section 1225(b)(1) aliens are detained for 'further consideration of the application for

19   asylum,' and § 1225(b)(2) aliens are in turn detained for '[removal] proceeding[s].' Once those

20   proceedings end, detention under § 1225(b) must end as well." *Id*. at 297, 302. Of particular

21   relevance here, the Court explicitly noted that neither § 1225(b)(1) or (b)(2) say "anything

22   whatsoever about bond hearings." *Id*. at 297. Ultimately, the Supreme Court found the Ninth

23   Circuit "erroneously concluded that periodic bond hearings are required under the immigration

24   provisions at issue," and remanded to the Ninth Circuit to "consider the constitutional arguments

25   on their merits." *Id*. at 312. Thus, while *Jennings* concluded that § 1225(b)(1) authorized

26   detention without a bond hearing on its face, it did not provide specific guidance as to whether an

27   alien could assert an as-applied challenge to prolonged detention without a bond hearing under

28   the Fifth Amendment due process clause.

Despite the lack of specific guidance from the Supreme Court or the Ninth Circuit on whether due process requires a bond hearing for noncitizens subject to mandatory detention for further consideration of an application for asylum under § 1225(b)(1)(b)(ii), multiple United States district courts have found "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *See, e.g., Banda v. MacAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019). A survey of these decisions reveals a myriad of overlapping balancing tests, often initially conceived and applied in the context of a lawful permanent resident detained under § 1226(c), to determine whether detention of an arriving alien under a § 1225(b) without a bond hearing has become so prolonged that it violates petitioner's due process rights under the Fifth Amendment.[7] *See id.* (finding 17-month detention of asylum seeker without bond hearing was "unreasonably prolonged" after conceiving and applying a multi-factor test that considers (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays in the removal proceedings caused by detainee, (5) delays in the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal); *Hong v. Myorkas*, 2022 WL 1078627, at *3 (W.D. Wash. (applying *Banda* factors and *Mathews v. Eldridge* to find detention for nearly 30 months without a bond hearing violated due process, and noting "district courts around the country have agreed that mandatory detention pending completion of removal proceedings 'without a bond hearing, will – at some point – violate the right to due process.'") (internal quotations omitted) (collecting cases) (citing *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022), *vacated on other grounds*, 144 S. Ct. 1339 (2024)); *Abdul-Samed*, 2025 WL 2099343 (applying *Lopez* test previously directed at noncitizens detained pursuant to § 1226(c) and determining detention for 16 months

---

[7] Detention under both § 1225(b) and § 1225(c) is mandatory. However, conflating the analysis of noncitizens held under these two distinct statutory frameworks arguably does not account for Supreme Court precedent, discussed in detail *supra*, distinguishing the rights of a aliens already present in the United States from an applicant for admission. *See, e.g., Otis V. v. Green*, 2018 WL 3302997, at *7 (D.N.J. July 5, 2018) ("aliens subject to detention as applicants for admission are entitled to Due Process Protections, albeit to a lesser extent than those which would apply to aliens subject to mandatory detention under § 1226(c) who are already considered to have entered the country"); *see also Jennings*, 583 U.S. at 303. As such, the court limits its consideration here to district court cases evaluating whether prolonged detention of a petitioner under § 1225(b) without a bond hearing violates due process.

without a bond hearing violated due process); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772–73 (S.D. Cal. 2020) (applying *Banda* factors and finding detention for over 20 months without bond hearing violated due process); *Leke v. Holt*, 521 F. Supp. 3d 597, 605 (E.D. Va. 2021) (applying no balancing test and determining detention for 24 months without bond hearing violated due process; *Djelassi v. ICE Field Office Dir.*, 434 F. Supp. 3d 917, 930 (W.D. Wash. 2020) (applying *Banda* factors and finding detention for 18 months without bond hearing violated due process); *Pierre v. Doll*, 305 F. Supp. 3d 327 (M.D. Pa. 2018) (applying no balancing test and finding detention for two years pending resolution of asylum application without a bond hearing was unreasonable); Perez v. Decker, 2018 WL 3991497 (S.D.N.Y. Aug. 20, 2018) (applying 3-factor test and finding detention for nine months without a bond hearing was unreasonable); *Rodriguez-Figueroa v. Barr*, 442 F. Supp. 3d 549, (W.D.N.Y. 2020) (applying *Mathews v. Eldridge* and 7-factor test previously directed at noncitizens detained pursuant to § 1226(c) to determine the length of detention without a bond hearing was unreasonable; *da Silva v. Nielsen*, 2019 WL 13218461 (S.D. Tx. Mar. 29, 2019) (applying 3-factor test and finding detention without a bond hearing for "just over a year" was unreasonably prolonged in violation of due process rights); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. Jan. 22, 2019) (applying 6-factor test and finding continuing to detain noncitizen for 19 months without a bond hearing would violate his due process rights).

In contrast, a number of United States district courts have determined on a case-by-case basis that mandatory detention under § 1225(b)(1) without an individualized bond hearing was not a violation of due process. *Navarrete-Leiva v. Current or Acting U.S. Att'y Gen*., 2024 WL 5111780, at *4 (E.D. Cal. Dec. 13, 2024) (finding due process considerations are "not at issue" because petitioner was provided two parole reviews, and "petitioner's detention is not indefinite; there is a clear termination point at the conclusion of petitioner's various legal challenges*")*; *Lopez v. United States Dep't of Homeland Sec.*, 2021 WL 2079840, at *3 (D. Ariz. Jan. 28, 2021) (finding petitioner's continued detention is constitutional as "it does not appear from the record … that petitioner's removal or release is not "reasonably foreseeable"); *Fatule-Roque v. Lowe*, 2018 WL 3584696, at *6 (M.D. Pa. July 26, 2018) (finding detention for 15 months "[had] not

1  become arbitrary or unreasonable" and was therefore not "an unconstitutional application of the

2  statute," and noting the length of detention can be "attributed, in large part, to the multiple

3  motions to reset [petitioner] submitted before the Immigration Court"); *Ford v. Ducote*, 2020 WL

4  8642257 (W.D. La Nov. 2, 2020) (finding no due process violation as detention not indefinite or

5  "potentially permanent," in contrast to *Zadvydas*, rather, it "ends when the removal proceedings

6  end"); *D.A.F. v. Warden, Stewart Detention Center*, 2020 WL 9460467, at *10-11 (M.D. Ga.

7  May 8, 2020) (collecting cases) (finding fifteen months of detention "failed to rise to the level of

8  unreasonably prolonged detention" and noting his immigration case "has not simply sat idle");

9  *Otis V. v. Green*, 2018 WL 3302997, at *8 (D.N.J. July 5, 2018) (relying on prior intra-district

10  cases to find petitioner's detention under § 1225(b) for just over a year, "given the lesser Due

11  Process protections applicable to applicants for admission, insufficient to render continued

12  detention so suspect as to require a bond hearing); *Pipa-Aquise v. Bondi*, 2025 WL 2490657, at

13  *2 (E.D. Va. Aug. 5, 2025) (finding detention for two months does not reach the "threshold" of

14  becoming "unreasonable and constitutionally infirm"); *Serrano-Ramirez v. Doll*, 2020 WL

15  2735358, at *3 (M.D. Pa. May 26, 2020) (finding petitioner detained for a little over one year was

16  not entitled to a bond hearing because "detention had not yet reached the point of being arbitrary

17  or unreasonable").

18      Here, to the extent Petitioner maintains his detention under § 1225(b)(1)(B)(ii) exceeds six

19  months without a bond hearing is unconstitutional on its face, such an argument is inapposite.

20  (Doc. No. 1 at 17-18).  As discussed above, the Supreme Court soundly rejected this facial

21  challenge in *Jennings*.  (Doc. No. 10 at 4); *Jennings*, 583 U.S. at 304 (an "implicit 6-month time

22  limit on the length of mandatory detention" falls "far short of a 'plausible statutory

23  construction.'"); *see also Abdul-Samed*, 2025 WL 2099343, at *5 (citing *Black v. Decker*, 103

24  F.4th 133, 150 (2d Cir. 2024) (noting three circuit courts of appeals that have "rejected a bright-

25  line constitutional rule requiring a bond hearing after six months of detention" and declining to

26  "adopt a presumption of reasonableness or unreasonableness of any duration of detention").

27      Next, Petitioner argues his 8-month detention has become unreasonably prolonged; thus,

28  "under *Mathews v. Eldridge*, Petitioner is constitutionally entitled to a bond hearing."  (Doc.

1 at 18-23 (arguing Petitioner (1) has significant liberty interest in freedom from confinement, (2)

the risk of erroneous deprivation of liberty in the absence of a bond hearing favors granting the

petition, and (3) the government has a negligible interest in detaining him without a bond

hearing)), 25).  In response, Respondent argues that Petitioner is properly detained as mandated

under § 1225(b)(1)(B)(ii) "pending a final determination of credible fear of persecution and, if

found to not have such a fear, until removed" (8 U.S.C. §§ 1225(b)(1)(B)(ii), (iii)(IV)); moreover,

his detention is constitutionally permissible because deportation proceedings are ongoing and

have a definite termination point, and "there is no evidence his detention during civil removal

proceedings is motivated for punitive reasons or that his detention otherwise fails to serve

immigration purposes."  (Doc. No. 10 at 6 (citing *Demore*, 538 U.S. at 513; *Jennings*, 583 U.S. at

304)).  Respondent also notes that the Supreme Court has not adopted a multi-factor balancing

test, like *Mathews v. Eldridge*, for constitutional challenges to civil detention in removal

proceedings, and encourages the Court to "follow its own precedent rejecting utilization of a

multi-factor balancing (*Mathews*) test to assess so-called as-applied due process violation

claims."  (*Id*. at 5 (citing *Keo v. Warden of the Mesa Verde ICE Processing Ctr.*, 2025 WL

1029392 (E.D. Cal. Apr. 7, 2025)).  In his opposition, Petitioner argues that Respondent's

reliance on *Keo* is misplaced because (1) Petitioner is detained pursuant to § 1225(b)(1), while

petitioner in *Keo* was detained under § 1226(c), and (2) *Keo* "does not properly apply Ninth

Circuit law."  (Doc. No. 12 at 7-14).

     As an initial matter, the Court agrees with Petitioner that *Keo* is easily distinguishable

from the instant case.  While both § 1225(b)(1) and § 1226(c) require mandatory detention of the

respective noncitizen, as detailed above, "aliens subject to detention as applicants for admission

are entitled … to a lesser extent [of Due Process protections] than those which would apply to

aliens subject to mandatory detention under § 1226(c) who are already considered to have entered

the country."  *Otis V. v. Green*, 2018 WL 3302997, at *7; *see also Demore*, 538 U.S. at 547

(noting Supreme Court law has "accorded [legal permanent residents] greater protections than

other aliens under the Due Process Clause.").  The Court also acknowledges *supra* that United

States district courts, including those in the Ninth Circuit, have ordered bond hearings for

18

1   noncitizens detained more than six months, and in some of those cases the court applied a

2   *Mathews v. Eldridge* balancing test to determine whether prolonged detention without a bond

3   hearing violated a noncitizen's due process rights.

4         However, the Court draws the line at Petitioner's suggestion that the Court "must apply

5   existing Ninth Circuit law holding that prolonged detention raises grave due process concerns"

6   and "follow the Ninth Circuit's due process holdings that as duration grows, detention without a

7   bond hearing raises serious concerns." (Doc. No. 12 at 12). Specifically, Petitioner argues that

8   Respondent's briefing and the *Keo* decision fail to "grapple with Ninth Circuit case law

9   describing six months of detention without a bond hearing as 'prolonged' and 'raising serious

10  constitutional concerns." (Doc. No. 12 at 10-12). In an abundance of caution, the Court will do

11  so here. The Court agrees with Petitioner that *Jennings* was a statutory-interpretation decision,

12  that left open an as-applied challenge to the constitutionality of detention without a bond hearing.

13  *See Jennings*, 583 U.S. at 312. However, none of the Ninth Circuit cases cited by Petitioner rise

14  to the level of "binding" precedent instructing district courts that mandatory detention without a

15  bond hearing under § 1225(b)(1)(B)(ii) offends due process at the six-month mark per se.

16        First, Petitioner cites *Diouf v. Napolitano*, where the court noted as part of a *Mathews v.

17  Eldridge* balancing test analysis that "[w]hen detention crosses the six-month threshold and

18  release or removal is not imminent, the private interests at stake are profound," and ultimately

19  held that "an alien facing prolonged detention under § 1231(a)(6) is entitled to a bond hearing

20  before an immigration judge." 634 F.3d 1081, 1091-92 (9th Cir. 2011) ("individuals detained

21  under § 1231(a)(6) are entitled to the same procedural safeguards against prolonged detention as

22  individuals detained under § 1226(a)"), *abrogated as recognized by Rodriguez Diaz v. Garland*,

23  53 F.4th 1190, 1201 (9th Cir. 2022). Thus, not only does the holding in *Diouf* not explicitly

24  define a bright-line rule that detention is constitutionally infirm at "when it crosses the six-month

25  mark," it is also distinguishable from the instant case as Petitioner here is under mandatory

26  detention pursuant to § 1225(b)(1)(B)(ii) as opposed to detention pending completion of removal

27  proceedings under § 1231(a)(6).

28        Second, in *Rodriguez v. Robbins* the court held that "the government must provide

1  periodic bond hearings every six months so that noncitizens may challenge their continued

2  detention."  804 F.3d 1060, 1089 (9th Cir. 2015) (*citing Diouf*, 634 F.3d at 1091).  However, in

3  *Jennings* the Supreme Court unambiguously found that *Rodriguez* "erroneously concluded that

4  [6-month] periodic bond hearings are required under" § 1225(b), and remanded the case to the

5  Ninth Circuit to consider whether the class could continue based on Petitioner's constitutional

6  claims.  *See Jennings*, 583 U.S. at 312.

7      Third, in *Rodriguez v. Marin*, while the Ninth Circuit expressed "grave doubts that any

8  statute that allows for arbitrary prolonged detention without any process is constitutional," the

9  court made no additional findings and remanded in part for a "reassessment and reconsideration"

10  "of the six-month bond hearing requirement."  909 F.3d 252, 256-57 (9th Cir. 2018).  Thus, while

11  arguably relevant to evaluating an as-applied challenge to whether a detention under § 1225(b)

12  without a bond hearing violates due process, these Ninth Circuit cases do not, as Petitioner

13  claims, "demonstrat[e] that due process requires a bond hearing once immigration detention lasts

14  longer than six months."  (Doc. No. 12 at 10-12).

15      Moreover, Petitioner does not cite, nor does the Court discern, binding case law from the

16  Supreme Court or the Ninth Circuit outlining a specific balancing test that must be used to

17  determine when or if detention under § 1225(b)(1) without a bond hearing violates due process,

18  much less explicit direction as to how a district court could "apply" a finding that a court has

19  "grave doubts that any statute that allows for arbitrary prolonged detention without any process is

20  constitutional." (Doc. No. 12 at 13-14; *see Rodriguez*, 909 F.3d at 256-57).  As recognized *supra*,

21  United States district courts have applied a variety of balancing tests, and no balancing test at all,

22  to evaluate on a case-by-case basis whether mandatory detention under § 1225(b)(1) without a

23  bond hearing violates due process.  However, "[a] decision of a federal district court judge is not

24  binding precedent in either a different judicial district, the same judicial district, or even upon the

25  same judge in a different case."  *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

26      In the absence of binding authority on this issue, and after thorough review of the

27  statutory text of § 1225(b)(1)(B)(ii), relevant Supreme Court precedents, and the various district

28  court cases identified above, this Court finds the threshold question in considering Petitioner's

claims of unreasonably prolonged detention under § 1225(b) without a bond hearing is whether Petitioner's continued detention serves the purported immigration purpose and has a definite termination point, as opposed to any "balancing test" to determine whether procedural due process is due. [8]  The Supreme Court has repeatedly reaffirmed its "longstanding view that the government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526; *Zadvydas*, 533 U.S. at 701; *Jennings*, 583 U.S. 304.  Here, as proceedings are still actively "pending a final determination of credible fear of persecution," detention of Petitioner is mandatory under the statutory text of § 1225(b)(1)(B)(ii). However, "[u]nlike aliens detained under 8 U.S.C. § 1231 whose detention could be 'indefinite' and 'potentially permanent,' aliens detained under § 1225(b) face a definite termination point." *Navarrete-Leiva*, 2024 WL 5111780, at *4 (citing *Demore*, 538 U.S. at 528-29); *Jennings*, 583 U.S. at 297 ("Once those proceedings end, detention under § 1225(b) must end as well."). Despite Petitioner's "plausible allegation" that his detention is "likely to continue for many more months, if not years" (Doc. No. 1 at 19, ¶ 61, Doc. No. 1-1 at 4, ¶ 11-12 (Petitioner's counsel attesting that based on his experience Petitioner will remain detained for months and "possibly years"); Doc. No. 12 at 14-15), Petitioner offers no evidence that his detention is indefinite or potentially permanent.

Moreover, Petitioner does not argue, nor does the Court discern, that the ongoing proceedings regarding his application for asylum are intended to "incarcerate [him] for other reasons," nor does Petitioner argue that his detention does not serve "its purported immigration purpose" or that he is being detained indefinitely.  *See Demore*, 538 U.S. at 533 (Kennedy, J., concurring).  Petitioner also does not point to any "unreasonableness" in the length of removal proceedings that is directly attributable to the government; rather, the delay appears to be a direct result of Petitioner taking full advantage of his opportunity to seek asylum.  He has been afforded due process in the form of parole review by ERO officers and review of his application for

---

[8] As the Court declines to apply a balancing test in this case, it is unnecessary to consider Petitioner's argument that Petitioner is constitutionally entitled to a bond hearing based on the *Mathews v. Eldridge* factors.  (Doc. No. 1 at 18-23; Doc. No. 12 at 13-20).

asylum.  *See Navarrete-Leiva*, 2024 WL 5111780, at *3 (noting petitioner was "twice reviewed for consideration of parole release" and therefore his "contention that his procedural due process rights have been violated by failure to provide opportunity to challenge continued detention is not well-taken.");  *Demore*, 538 U.S. at 530-31 ("Respondent was detained for somewhat longer than the average … but respondent himself had requested a continuance of his removal hearing."); *Fatule-Roque*, 2018 WL 3584696, at *6 (noting the length of detention can be "attributed, in large part, to the multiple motions to reset [petitioner] submitted before the Immigration Court"). "While [Petitioner] certainly has the right to pursue all available avenues to combat his removal, post-*Jennings*, he does not have the right to parlay the resulting delay into a bond hearing." *Oladipupo*, 2023 WL 3568498, at *5 (noting there was "no indication proceedings were unreasonably delayed for any reason attributable to the government," rather, the length of petitioner's detention "is primarily attributable to the avenues for relief that he has pursued and his requests for extensions of time.").

To find Petitioner—an arriving asylum seeker who had not yet been admitted to the United States and has an asylum application pending—is entitled to a bond hearing solely based on the length of his detention would render § 1225(b)(1) meaningless.  To be clear, this common-sense reasoning does not foreclose the possibility of a due process violation and bond hearing for a § 1225(b)(1) detainee where circumstances evince that detention is <u>indefinite</u> or <u>for</u> <u>some</u> <u>other</u> <u>non-immigration</u> <u>purpose</u>.  In *Demore*, the Court acknowledged that "detention … d[oes] not serve its purported immigration purpose" when removal is "no longer practically attainable."  538 U.S. at 527 (citing *Zadvydas*, 533 U.S. at 690) (where "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed"); *see also id*. at 532-33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against the flight or dangerousness, but to incarcerate for other reasons."); *Wong Wing v. United States*, 163 U.S. 228, 237-38 (1896) (finding civil detention of a removeable noncitizen violates the Constitution if it is punitive).  Moreover, while not cognizable on habeas review, nothing in

1  these Findings and Recommendations prevents Petitioner from asserting a separate condition of

2  confinement claim to the extent he submits the conditions versus the fact of his detention violate

3  the Constitution. *See Mendoza-Linares*, 2024 WL 3316306, at *2 n.1 (citing *Nettles v. Grounds*,

4  830 F.3d 922, 933 (9th Cir. 2016)); *Lopez*, 2021 WL 2079840, at *5 (collecting cases).

5        Here, however, it is undisputed that Petitioner's detention as an arriving alien for

6  consideration of his application for asylum is mandated under § 1225(b)(1)(B)(ii). *See Jennings*,

7  583 U.S. at 303-04. As discussed in detail above, Petitioner's detention is not indefinite; there is

8  a definite termination point after a decision on Petitioner's application for asylum, and if

9  warranted, at the conclusion of his right to pursue all avenues for relief from removal. There is

10 no indication that the ongoing asylum proceedings do not serve their intended purpose or are

11 intended to "incarcerate him for other reasons." *Demore*, 538 U.S. at 527, 538. Therefore, the

12 Court finds no due process violation in Petitioner's continued detention under § 1225(b)(1)(B)(ii)

13 without a bond hearing at this time. *See Romero-Romero*, 2025 WL 391861, at *9 ("Should

14 circumstances change and continued detention appear to be indefinite in nature, due process may

15 require a different outcome.").

16       Accordingly, it is hereby **RECOMMENDED:**

17     1.   The district court grant Respondent's motion to dismiss all improperly named officials

18          as Respondents and find the sole proper respondent is Tonya Andrews, Facility

19          Administrator of Golden State Annex Detention Facility.

20     2.   Respondent's Motion to Dismiss (Doc. No. 10) be GRANTED to the extent the

21          Petition is denied on the merits.

22                               **NOTICE TO PARTIES**

23       These Findings and Recommendations will be submitted to the United States District

24 Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days

25 after being served with a copy of these Findings and Recommendations, a party may file written

26 objections with the Court. *Id.*; Local Rule 304(b). The document should be captioned,

27 "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen**

28 **(15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party

23

wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).


Dated:    November 25, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

24