UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN DOE,

     Petitioner,

    v.

TONYA ANDREWS, Facility Administrator of Golden State Annex Detention Facility,

     Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No.: 1:25-cv-00333-JLT-HBK (HC)

ORDER DECLINING TO ADOPT FINDINGS AND RECOMMENDATIONS, GRANTING PETITION FOR WRIT OF HABEAS CORPUS, DENYING RESPONDENTS' MOTION TO DISMISS, AND DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE

(Docs. 1, 10, 25)

John Doe is an immigration detainee in U.S. Immigration Customs and Enforcement custody at the Golden State Annex Detention Facility in McFarland, California, proceeding with counsel on his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 which challenges the constitutionality of his detention without a bond hearing.  (Doc. 1.) Respondents filed a motion to dismiss the petition.[1] (Doc. 10.) This matter was referred to a United States Magistrate

---

[1] As the Findings and Recommendations note, Respondents move to dismiss all unlawfully named officials under 8 U.S.C. § 2241. (Doc. 25 at 1, n.1.) This Court agrees with the undersigned to dismiss all unlawfully named officials and recognizes the proper Respondent as the Facility Administrator of Petitioner's detention facility, the Golden State Annex. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official"); *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024) (explaining that in a habeas petition challenging physical confinement, the proper respondent is the immediate custodian or the warden of the facility where the noncitizen is detained).

Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On November 25, 2025, the magistrate judge issued Findings and Recommendations to grant Respondents' motion to dismiss and deny the petition for writ of habeas corpus. (Doc. 25.) The Court served the F&Rs on all parties, which notified them that any objections thereto were to be filed within fourteen days after service. (*Id*. at 23.) In addition, the Court advised the parties that the "failure to file objections within the specified time may result in the waiver of certain rights on appeal." (*Id*. at 24 (citing *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).) After one extension of time, Petitioner filed objections to the F&R on December 19, 2025, (Doc. 30), and Respondents filed a response to such objections on December 24, 2025. (Doc. 31.)

According to 28 U.S.C. § 636(b)(1)(C), this Court performed a *de novo* review of this case. Having carefully reviewed the matter, along with the objections, response, all other relevant documents, and the governing law, the Court **DECLINES** to adopt the Findings and Recommendations, **GRANTS** Petitioner's habeas corpus petition, **DENIES** Respondent's motion to dismiss, and **ORDERS** Respondents to provide Petitioner with a substantive bond hearing where the Government bears the burden of showing, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community such that his continued detention is warranted.

## I.   BACKGROUND

Petitioner is a native and citizen of Belize who entered the United States unlawfully on July 1, 2024, and was immediately apprehended by Customs and Border Protection near the border. (Doc. 1, ¶¶ 17, 26; Doc. 10-1, ¶ 5, 6.) Petitioner acknowledged that he had no legal documents allowing him to enter or remain in the United States. (Doc. 10-1 at 7–8.) On July 2, 2024, CBP issued an expedited order of removal pursuant to 8 U.S.C. § 1225(b)(1)(A)(i) and referred Petitioner to an asylum officer for a credible fear interview after he expressed fear of returning to Belize. (Doc. 1, ¶¶ 26, 27; *see also* Doc. 10-1 at 3, 10–11.) On or around August 7, 2024, an asylum officer found that Petitioner had a credible fear of torture if removed to Belize. (Doc. 1, ¶ 27.) According to Petitioner, his positive credible fear determination entitled him to have his asylum case heard in full before an Immigration Judge. (Doc. 1-1, ¶ 4.)

Soon after Petitioner was taken into custody, "DHS determined there was a Red Notice from his country of origin." (Doc. 10 at 2.) Respondents allege that Petitioner fled from crimes he committed in his home country. (*Id*.) Respondents submit an arrest warrant from Belize indicating that sometime in June 2024, Petitioner was charged with aggravated assault with a firearm upon the residence of a commissioner of police. (*See* Doc. 10-1 at 27–29.) Petitioner claims that he was "never convicted of a crime in Belize" and that the police "fabricated charges" against him partially because he spoke out against the "pervasive corruption in the police department" to a "reporter for a prominent news broadcaster in Belize." (Doc. 1, ¶¶ 24, 25.) Petitioner claims that he fled Belize because he "faced constant threats to his freedom, [] his life, and [] the wellbeing of his wife and children" after he refused to stay quiet about the illegal police activity he had witnessed. (*See* Doc. 1, ¶¶ 21–25.)

On August 14, 2024, at his first immigration hearing, U.S. Citizenship and Immigration Services served the Petitioner with a Notice to Appear, which vacated the expedited order of removal pursuant to 8 C.F.R. § 208.30 and charged Petitioner as removable under 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), 1182(a)(6)(A)(i). (Doc. 1, ¶¶ 27, 39; Doc. 1-1, ¶ 5; Doc. 10-1 at 13–15.) From August 14, 2024, through April 22, 2025, Petitioner was scheduled for a series of master calendar hearings before the IJ. (*See* Doc. 10-1 at 17–25.) Petitioner claims to have "appeared as required at all hearings." (Doc. 1-1, ¶ 5.) Petitioner claims that he did not secure *pro bono* immigration counsel until January 13, 2025, and was therefore self-represented during the first half of these proceedings. (*See* Doc. 1-1, ¶¶ 1–2.)

Respondents claim that during four of these hearings, from August 26, 2024, to January 22, 2025, Petitioner requested additional time to prepare and received continuances every time. (Doc. 10 at 2.) Specifically, Respondents claim that Petitioner "requested additional time to find an attorney," on August 26, 2024, then once he obtained counsel, his "attorney asked for additional time to prepare" on October 16, 2024, and that Petitioner "had not completed his applications for relief" as of December 11, 2024. (Doc. 10-1, ¶¶ 10–12.) However, Petitioner argues that his "*pro se* appearances at his master calendar hearings" do not constitute delay, (Doc. 12 at 17), and that he did not retain counsel until January 13, 2025, (Doc. 1-1, ¶ 2), therefore his

3

attorney could not have possibly asked for an extension on October 16, 2024. (Doc. 12 at 17.) Petitioner argues that he completed his asylum application on September 20, 2024, and he filed it shortly thereafter. (Doc. 12 at 17.) As for any initial delays while Petitioner was *pro se*, Petitioner implies that these delays were caused, in part, due to an inability to obtain key evidence in support of his asylum case. (*See* Doc. 1 at 11–12.) Petitioner argues that the guards at Golden State Annex ignored his requests to access his personal property to obtain key documents and evidence for his case. (*Id*.) He claims that "[o]nly months later, after he retained *pro bono* counsel who echoed his demands for access to his personal property, did Golden State Annex finally relent." (Doc. 1 at 12.) Petitioner claims that even assuming some delays are attributable to him, "the fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process." (Doc. 12 at 18 (citing *Henriquez v. Garland*, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022).)

On August 26, 2024, at a master calendar hearing, Petitioner requested a bond hearing. (Doc. 1-1, ¶ 6.) The IJ denied the request for a bond hearing and stated that she "lacked the statutory authority to hold a bond hearing for him" and instead "advised [him] to submit a request for discretionary parole to ICE." (Doc. 1-1, ¶ 6.) On September 20, 2024, Petitioner claims he completed his I-589 Application for Asylum and filed it shortly thereafter. (Doc. 1, ¶ 41; Doc. 1-1, ¶ 7.) Petitioner subsequently mailed his asylum application to the immigration court, which he claims the IJ received on December 11, 2024. (Doc. 1-1, ¶ 7.)

On November 2024, Petitioner submitted a request for release on parole to the ICE deportation officer assigned to his case. (Doc. 1-1, ¶ 8.) Petitioner claims that ICE failed to respond to his parole request for weeks. (*Id*.) Once Petitioner obtained counsel on January 13, 2025, (Doc. 1-1, ¶ 2), his counsel contacted ICE to inquire about the status of Petitioner's parole request. (Doc. 1-1, ¶ 8.) ICE informed counsel that Petitioner's request had been denied on December 19, 2024, and that Petitioner received notice of such denial. (Doc. 1-1, ¶ 8; *see also* Doc. 10 at 3.) After discovering that Petitioner never received a written decision of such denial, Petitioner's counsel requested a copy of the written decision from ICE. (Doc. 1-1, ¶ 8.) On

4

January 15, 2025, ICE issued an Interim Notice Declining Parole letter which stated: "ICE has decided not to parole you from custody at this time. The decision to authorize parole is discretionary . . . You have not established to ICE's satisfaction that you are not a flight risk . . . a security risk[,] or danger to the community." (Doc. 1-1, ¶ 9.) Then, on March 19, 2025, Petitioner filed the instant petition for writ of habeas corpus challenging his prolonged detention without a bond hearing. (Doc. 1.)

According to Petitioner, the "first hearing on the merits of his asylum case" was scheduled for April 22, 2025. (Doc. 1-1, ¶ 11.) Although neither party has updated the Court on the status of Petitioner's asylum determination, publicly available information on EOIR's website indicates that the IJ ordered Petitioner removed on September 15, 2025.[2] *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/ (last visited March 17, 2026). It is unclear what caused the delay between April 22, 2025 and September 15, 2025 for the IJ to render a decision. Furthermore, according to EOIR's website, Petitioner appealed the IJ's order of removal to the Board of Immigration Appeals on September 26, 2025. *See id*. The website indicates that Petitioner submitted his appellate brief on January 27, 2026, that DHS failed to submit an appellate brief, and that the briefing schedule has now expired. *Id*. Accordingly, it appears that the IJ denied Petitioner's asylum, ordered the Petitioner removed, and the BIA has not yet issued a decision on appeal. *Id*. Petitioner has now been in continuous ICE detention for over twenty months.

## II.    JURISDICTION

### A.  Habeas Corpus

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack

---

[2]  Using Petitioner's A-Number, the Executive Office for Immigration Review's website provides "basic information about the status of certain cases before an immigration court or the Board of Immigration Appeals" and though not "all information about a case is displayed," the website provides a general update on Petitioner's asylum case. EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/ (last visited March 18, 2026).

by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner requests this Court issue an order granting a bond hearing and a declaration stating that his prolonged detention without such hearing violates the Due Process Clause of the Fifth Amendment. (Doc. 1 at 25–26.) Thus, he properly invokes the Court's habeas jurisdiction.

### B.  Judicial Review Under the Immigration and Nationality Act ("INA")

The INA limits judicial review in many instances. For instance, 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C § 1252(g). However, Petitioner does not challenge the merits of his removal order, rather his prolonged detention under § 1225(b)(1). Thus, this Court has the authority to review Petitioner's claim. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection).

Respondents challenge this Court's jurisdiction to review Petitioner's claims as barred under 8 U.S.C. §§ 1252(a)(2)(A), 1252(e). (Doc. 18 at 3.) This Court notes that *Padilla v. U.S. Immigration and Customs Enforcement*, 704 F. Supp. 3d 1163, 1169–70 (W.D. Wash. 2023) dealt with this precise issue and assessed whether these two statutory provisions strip the Court of jurisdiction to review a petitioner's request for a bond hearing despite section 1225(b)(1)(B)'s mandatory detention provisions. There, the court explained:

> First, the Court continues to find that § 1252(a)(2)(A) has no application to Plaintiffs' claims. (citations omitted). This provision only applies to the procedures and policies necessary to implement the removal process. Here, Plaintiffs' bond hearing claims do not challenge the removal process—just whether they should be afforded a bond hearing after obtaining a positive credible fear finding. As the Court previously explained: "The gravamen of Plaintiffs' lawsuit is that Defendants have not adopted any formal procedure or policy regarding when . . . the bond hearings of which they complain will be held; hence the issue of impermissible 'indefinite detention.'" (citations omitted). The Court finds no reason to reconsider this decision.
>
> Second, the Court continues to find that § 1252(e)(3), does not strip the Court of jurisdiction. The Court previously explained that § 1252(e)(3) addresses "challenges to the removal process itself, not to detentions attendant upon that process." (citations omitted). The

> Court relied on the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), which rejected application of a similar jurisdiction-stripping provision to claims challenging the detention process for those facing removal. *Id*. In *Jennings*, the Supreme Court explained that there is jurisdiction to review the legality of detention under § 1225(b) where petitioners were "not asking for review of an order of removal; . . . not challenging the decision to detain them in the first place or seek removal; and . . . not even challenging any part of the process by which their removability will be determined." *Jennings*, [583 U.S. at 294]. The same logic applies here because Plaintiffs challenge only the constitutionality of their detention, and the relief they seek does [not] implicate the removal system. The Court rejects Defendants' argument and continues to find that it has jurisdiction over the claims regarding bond hearings.

This Court adopts and applies this reasoning to the instance case and thereby rejects Respondents' jurisdictional argument.[3]

## III.   DISCUSSION

As the F&Rs correctly note, the applicable statutory detention authority is 8 U.S.C. § 1225(b)(1), (Doc. 25 at 6–7), which applies to noncitizen "applicants for admission" initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid entry documents. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an IJ or review of the removal order. *See* 8 U.S.C. § 1225(b)(1)(A)(i). However, under this provision, if a noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," the inspecting immigration officer "shall refer the [noncitizen] for an interview [with] an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). If the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "*shall* be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added). Under the statute, the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3.

---

[3] This precise jurisdictional issue is currently pending review by the Ninth Circuit in an ongoing class action litigation asserting the right to a bond hearing for individuals who enter without inspection and then demonstrate a credible fear of deportation. *See Padilla et al. v. U.S. ICE, et al.* (9th Cir. 2025) (No. 24-2801).

There is no question that these statutes apply here. The record indicates that Petitioner entered the United States at a port of entry without admission or parole and without valid entry documents; was apprehended by CBP near the border; was ordered removed through expedited removal; claimed fear of returning to Belize; received a positive credible fear determination; was issued a Notice to Appear vacating his expedited order of removal and charging him as removable under § 1182(a)(7); and was placed in immigration proceedings pending a determination on his asylum application. (*See* Doc. 10-1; Doc. 1, ¶¶ 26, 27.) Therefore, Petitioner falls under § 1225(b)(1)(B)(ii)'s mandatory detention provision.

This case raises two main issues. First, whether an applicant for admission under § 1225(b)(1) has any due process rights beyond those authorized by statute. Second, whether Petitioner's prolonged detention under § 1225(b)(1) as applied to him now requires a bond hearing. As the F&R notes, the Supreme Court and Ninth Circuit have answered this question in a piece-meal fashion, and district courts around the country have taken different approaches. (Doc. 25 at 7–12, 13–17); *see Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1113–17 (W.D. Wash. 2019) (summarizing the relevant caselaw).

The Court concludes that relevant caselaw under the various INA detention provisions— and under § 1225(b)(1) specifically—do not bar Petitioner's due process claim. The Court further concludes that Petitioner's now 20-month detention without a bond hearing violates due process.

**A. Caselaw Regarding the Various INA Detention Statutes Do Not Bar Petitioner's Due Process Claim.**

Although only § 1225(b)(1) is at issue here, the Court notes that there are "[f]our statutes which govern immigration detention," which provide context for the discussion below regarding Petitioner's due process rights. *See Avilez v. Garland*, 69 F.4th 525, 529–31 (9th Cir. 2023). As the Ninth Circuit explained:

> 8 U.S.C. § 1225(b) ("Section 1225(b)"), 1226(a) ("Subsection A"), 1226(c) ("Subsection C"), and 1231(a) ("Section 1231(a)"). . . . Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens "[e]xcept as provided in [Subsection C]." 8 U.S.C. § 1226(a). Subsection A states that "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to

be removed from the United States." *Id.* (emphasis added). The statute also provides for release on bond or conditional parole. *Id.* at § 1226(a)(2). Because of Subsection A's permissive language—specifically, the word "may"—detention under Subsection A is discretionary. *See Prieto-Romero* [*v. Clark*], 534 F.3d [1053,] 1059 [(9th Cir. 2008)].

Subsection C provides for the detention of "criminal aliens" and states that "[t]he Attorney General *shall* take into custody any alien who" is deportable or inadmissible based on a qualifying, enumerated offense. 8 U.S.C. § 1226(c) (emphasis added). Release under Subsection C is limited to certain witness protection purposes. *See id.* at § 1226(c)(2). Because of its use of the word "shall," detention under Subsection C is mandatory. *See Jennings*, [583 U.S. at 303–304].

The differences in the discretionary or mandatory language of Subsections A and C respectively have significant consequences. Under Subsection A—the default detention provision—a noncitizen is entitled to a bond hearing at which the IJ considers whether the noncitizen is a flight risk or a danger to the community. *See Jennings*, [583 U.S. at 306] ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention. See 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)."); *see also Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011). By contrast, under Subsection C, which applies to noncitizens convicted of certain crimes, a noncitizen is not statutorily entitled to a bond hearing. *See Jennings*, [583 U.S. at 303–304].

Finally, Section 1231(a) applies to detention after the entry of a final order of removal. In contrast to Subsections A and C, Section 1231(a) does not apply to detention during the pendency of administrative or judicial removal proceedings. Section 1231 instead governs detention during a ninety-day "removal period" after the conclusion of removal proceedings."

*Avilez*, 69 F.4th at 529–31.

In *Zadvydas*, the Supreme Court held that under § 1231(a)(6), the government may detain a removable noncitizen beyond the 90-day statutory removal period, but only for so long as "reasonably necessary to secure the alien's removal." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). The Court explained that the statute contains an implicit reasonable time limitation, which is presumptively six months, after which the noncitizen bears the burden of proving that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 682, 701.

Relying on *Zadvydas*, the petitioner in *Demore* raised a facial challenge to § 1226(c)'s mandatory detention framework arguing that the statute was unconstitutional because it allows for prolonged detention during the removal process. *Demore v. Kim*, 538 U.S. 510, 517–18, 527–29

(2003). The Court disagreed and explained that *Zadvydas* was materially different because (1) it involved noncitizens with final deportation orders whose removal could not be effectuated and therefore continued detention "no longer [bore] a reasonable relation to the purpose for which the individual was committed" (e.g., to prevent flight); and (2) it involved a period of detention that was indefinite and potentially permanent. *Demore*, 538 U.S. at 527–31. Whereas under §1226(c), the Court explained, "detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the change that, if ordered removed, the aliens will be successfully removed" and detention is of a much shorter duration with a definite end point. *Id*. at 528–29 (concluding that detention under § 1226(c) lasts roughly a month and a half in the vast majority of cases and about five months in the minority cases where the noncitizen chooses to appeal). The concurrence, which created the majority rejecting the facial challenge to mandatory detention under § 1226(c), expressly noted however that "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id*. at 532 (Kennedy, J. concurring).

Then, in *Jennings*, the Supreme Court rejected the Ninth Circuit's interpretation that §§ 1225(b), 1226(a), and 1226(c) include an implicit 6-month time limit on the length of mandatory detention and reversed *Rodriguez III*, holding that these statutes do not provide a right to periodic bond hearings every six months. *Jennings*, 583 U.S. at 301, 304, 306; *see also Rodriguez v. Robbins (Rodriguez III)*, 804 F.3d 1060, 1065 (9th Cir. 2015) (involving a class action where noncitizens challenged their prolonged detention under §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention).

Notably, however, the Supreme Court in *Jennings* "chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings. . . . [T]he Court concluded that as a matter of statutory construction, the only exceptions to indefinite detention were those expressly set forth in the statutes or related regulations. *See* 8 U.S.C. § 1182(d)(5)(A) (humanitarian parole); 8 U.S.C. § 1226(a)(2)(A)

10

(bond); 8 U.S.C. § 1226(c)(2) (witness protection); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) (bond hearing)." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018); *see Jennings*, 583 U.S. at 288–289, 301, 304–306. Instead, the Supreme Court remanded the constitutional issues to the Ninth Circuit. *Jennings*, 583 U.S. at 312 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments . . . . [W]e do not reach those arguments. Instead, we remand the case to the Court of Appeals to consider them in the first instance."). In turn, the Ninth Circuit remanded the case to the district court to consider the constitutional arguments in the first instance, noting it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez*, 909 F.3d at 255–256.

Therefore, the Supreme Court did not foreclose the ability to raise as-applied challenges to prolonged detention under these statutes. *Rodriguez*, 909 F.3d at 255–256; *Jennings*, 583 U.S. at 312. Then, in *Nielsen*, the Supreme Court expressly noted that as-applied challenges to detention under § 1226(c) are not foreclosed. *Nielsen v. Preap*, 586 U.S. 392, 420 (2019). This suggests that those detained under § 1225(b)(1) have due process rights beyond those authorized by statute, contrary to Respondents' assertions.[4] (Doc. 18 at 2); *see also Banda*, 385 F. Supp. 3d at 1105–06

[4] The Court notes that during Petitioner's first five months of detention, he received a custody re-determination wherein ICE denied his request for release on parole because he had failed to establish that he was not a flight risk or danger to the community. (Doc. 1-1, ¶¶ 8, 9; Doc. 10 at 3.) Respondents argue that such procedures constitute "due process protections built into the legislative (statutory) scheme" and that Petitioner's request for a bond hearing "is unwarranted by law and the statutory foundation." (Doc. 18 at 4, n.1.) However, as explained above, Supreme Court and Ninth Circuit caselaw does not foreclose Petitioner's due process challenge to his now twenty-month detention under § 1225(b)(1). As *Padilla* best explained: "The parole process does not afford the noncitizen an in-person adversarial hearing before a neutral decisionmaker where he or she may present witness testimony or evidence. *See* 8 C.F.R. § 212.5. Additionally, the ICE detention officer need not make any factual findings or provide their reasoning, and there is no apparent right to an administrative appeal. This process is not an adequate substitute for a bail hearing to test the legitimate need for continued detention." *Padilla*, 704 F. Supp. 3d at 1174. Additionally, to the extent Respondents argue that under *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1195 (9th Cir. 2022), Petitioner's continued detention under § 1225(b)(1) without a bond hearing is "*per se* lawful," such argument is unavailing. (Doc. 18 at 2.) In *Rodriguez Diaz*, the petitioner was detained under § 1226(a) and had already received a bond hearing before an IJ where the IJ denied release on bond. 53 F.4th at 1193. There, the petitioner challenged his continued detention under § 1226(a) arguing that the due process clause entitled him to a second bond hearing. *Id.* That is drastically different than the issue

11

(explaining that *Jennings* did not foreclose due process challenges and that "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process.").

### B. *Thuraissigiam* Does Not Bar Petitioner's Due Process Claim.

Additionally, contrary to Respondents' assertions, (Doc. 18 at 3), the Supreme Court's decision *Thuraissigiam* also does not foreclose Petitioner's due process challenge.[5] *See Dep't of Homeland Sec., et al. v. Thuraissigiam*, 591 U.S. 103 (2020). The court in *Padilla* addressed this precise issue and this Court adopts its reasoning in the present case.[6] *Padilla* explained:

> The Court stands unconvinced that the Supreme Court's decision in *Thuraissigiam* requires dismissal of Plaintiff's due process claim. Given the distinct claims presented in *Thuraissigiam*, the Court finds the decision's narrow holding presents no bar to Plaintiffs' claim.
>
> In *Thuraissigiam*, the respondent argued that due process entitled him to an opportunity to reapply for asylum on account of certain alleged defects he identified in the process that led to rejection of his asylum application. [591 U.S. at 138–140]. To understand this claim, the Court first reviews the factual background and procedural posture of the case. Like Plaintiffs in the case before this Court, the respondent in *Thuraissigiam* was placed into expedited removal proceedings after being detained upon his entry to the United States where he was found inadmissible. *Id*. at [114]. Like Plaintiffs here, the respondent applied for asylum. *Id*. But unlike Plaintiffs here, the respondent in *Thuraissigiam* was unable to convince the immigration officer, a supervising officer, or immigration judge that he faced a credible fear of persecution if returned to his home country. *Id*. at [114]. Having failed to present a bona fide asylum claim, the respondent was subject to "remov[al] from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I); *Thuraissigiam*, [591 U.S. at 114]. The respondent then filed a habeas

before this Court which pertains to prolonged detention under § 1225(b)(1) without an initial bond determination.

---

[5] Until July 2019, noncitizens like Petitioner here were entitled to bond hearings before an IJ, as are noncitizens in full removal proceedings. *See Matter of X-K-*, 23 I.&N. Dec. 731, 731 (BIA 2005). In 2019, the Attorney General overruled *Matter of X-K-*, and interpreted 8 U.S.C. § 1225(b)(1)(B)(ii) to require mandatory detention without bond hearings for asylum seekers who were initially subject to expedited removal but later transferred to full removal proceedings after establishing credible fear. *See Matter of M-S-*, 27 I.&N. Dec. 509, 515–17 (2019). Under *Matter of M-S-*, the only possibility for release available to noncitizens in this category is a discretionary grant of parole by the Department of Homeland Security for "urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5). *Id*. at 516–17.

[6] This precise due process issue is currently pending review by the Ninth Circuit in an ongoing class action litigation asserting the right to a bond hearing for individuals who enter without inspection and then demonstrate a credible fear of deportation. *See Padilla et al. v. U.S. ICE, et al.* (9th Cir. 2025) (No. 24-2801).

petition through which he sought a writ of habeas corpus, an injunction, or writ of mandamus directing the Department of Homeland Security to provide him a "new opportunity to apply for asylum and other applicable forms of relief." *Thuraissigiam*, [591 U.S. at 114–15]. He argued that he had been deprived of a meaningful opportunity to establish his credible fear claims and that the wrong standards were applied. *Id*. But the respondent "made no mention of release from custody." *Id*.

The Supreme Court in *Thuraissigiam*, rejected respondent's due process claim. The Court explained that "aliens who arrive at ports of entry . . . are 'treated' for due process purposes 'as if stopped at the border.'" *Id*. at [139] (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). And as to any due process rights concerning their efforts to gain admission, these individuals possess "only those rights regarding admission that Congress has provided by statute." *Id*. at [140]. The Court based this conclusion on the proposition that "[t]he power to admit or exclude aliens is a sovereign prerogative" and that "the Constitution gives the political department of the government plenary authority to decide which aliens to admit, and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Id*. at [139] (citation and quotation omitted). With these principles in mind, the Court held that as to his request for admission into the United States, the respondent had only "a right to a 'determin[ation]' whether he had 'a significant possibility' of 'establish[ing] eligibility for asylum.'" *Id*. at [140] (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), (v)). Having been "given that right," the respondent was entitled to no more process in his efforts to gain admission to the United States. *Id*.

*Padilla*, 704 F. Supp. 3d at 1171. Similarly to *Padilla*, the Petitioner here is also an applicant for admission who received a positive credible fear determination and who challenges only his prolonged detention under § 1225(b)(1) not the merits of the asylum decision itself. (Doc. 1, ¶¶ 27, 80–81.) "Defendants ask the Court to extract from *Thuraissigiam* a broad rule that any inadmissible noncitizen possesses only those due process rights afforded to them by statute, regardless of the nature of their status or the relief they seek. But such conclusion is untethered to the claim in *Thuraissgiam* and the Court's reasoning. *Thuraissigiam's* discussion of due process is necessarily constrained to challenges to admissibility to the United States. This was the sole claim presented and the respondent expressly asked for a chance to reapply for asylum and admission. The Court then exclusively analyzed whether a noncitizen applicant for admission has any 'rights regarding admission' beyond those set by Congress." (*See* Doc. 18 at 3); *Padilla*, 704 F. Supp. 3d at 1171–72 (citations omitted).

Accordingly, the Court finds that the holding in *Thuraissigiam* does not foreclose Petitioner's due process claim which merely seeks a chance to apply for release on bond pending resolution of his bona fide asylum claim that remains to be resolved in standard removal proceedings. *Padilla*, 704 F. Supp. 3d at 1172.

### C.  Petitioner's Due Process Right to a Bond Hearing.

Courts in this circuit have taken various approaches to determine whether procedural due process requires a bond hearing in a case of prolonged detention under § 1225(b)(1). *See Padilla*, 704 F. Supp. 3d at 1166, 1173–74 (W.D. Wash. 2023) (applying the factors enumerated in *Mathews v. Eldrige*, 424 U.S. 319, 335 (1976) to assess plaintiffs' due process claims regarding prolonged detention under § 1225(b)(1)); *Banda*, 385 F. Supp. 3d at 1106–07, 1116–17 (W.D. Wash. 2019) (applying a six-factor test to assess whether petitioner's prolonged detention under § 1225(b)(1) without a bond hearing violated due process); *Tigranyan v. Warden of California City Detention*, No. 1:25-cv-01554-DJC-SCR, 2026 WL 91765, at *4–5 (E.D. Cal. Jan. 13, 2026) (applying the *Mathews* factors to a prolonged detention claim under § 1225(b)(1)); *report and recommendation adopted in full*, 2026 WL 130843, at *1 (E.D. Cal. Jan. 16, 2026); *Bobokulov Akmal v. Warden of California City Detention*, No. 1:25-cv-01921-DC-DMC-HC, 2026 WL 657606, at *6 (E.D. Cal. March 9, 2026) (applying the three-factor test enumerated in *Lopez v. Garland*, 631 F. Supp. 3d 870 (2022) to a prolonged detention claim under § 1225(b)(1)); *Lebedev v. Warden of Golden State Annex*, No. 1:25-cv-01391-KES-SAB-HC, 2026 WL 482733, at *5–8 (E.D. Cal. Feb. 20, 2026) (applying the three-factor *Lopez* test to a prolonged detention claim under § 1225(b)(1)); *Saribekyan v. Chestnut*, No. 1:26-cv-01696-DJC-DMC, 2026 WL 776031, at *1–2 (E.D. Cal. Mar. 19, 2026) (applying the six-factor *Banda* test to prolonged detention under § 1225(b)(1)).

Though *Lopez* concerned a due process challenge to mandatory detention under § 1226(c), the factors enumerated there are, in essence, a truncated version of the factors enumerated in *Banda*, which concerned mandatory detention under § 1225(b)(1).[7] And on two occasions, this

---

[7] The six-factor test enumerated in *Banda* include: (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused

14

Court has applied the three-factor *Lopez* test to mandatory detention under § 1225(b)(1). *See Bobokulov Akmal*, 2026 WL 657606, at *6; *Lebedev*, 2026 WL 482733, at *5–8. Accordingly, this Court will do the same. Upon an application of these factors, this Court finds that Petitioner is entitled to a bond hearing where the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger.[8]

        1.   Total Length of Detention to Date

First, the length of detention, which is often considered the "most important factor," *see e.g., Banda*, 385 F. Supp. 3d at 1118, weighs in Petitioner's favor because he has now been detained for over twenty months without a bond hearing. (Doc. 1, ¶ 3.) Courts have found that detention for fifteen, seventeen, twenty-four, and twenty-five months under § 1225(b)(1) without a bond hearing, pending a final determination on an asylum application was unreasonably prolonged. *See Saribekyan*, 2026 WL 776031, at *2; *Banda*, 385 F. Supp. 3d at 1118; *Bobokulov Akmal*, 2026 WL 657606, *6; *Lebedev*, 2026 WL 482733, at *5. The length of Petitioner's detention strongly favors granting him a bond hearing.[9]

---

by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1117. The three-factor test enumerated in *Lopez* include: (1) the total length of detention to date; (2) the likely duration of future detention; and (3) the delays in the removal proceedings caused by the petitioner and the government. *Lopez*, 631 F. Supp. 3d at 879. In *Lopez*, this Court explained why certain factors—such as conditions of detention, or likelihood of obtaining a final order of removal—do not particularly assist the Court in determining whether detention has become unreasonable or whether due process requires a bond hearing. *See* 631 F. Supp. 3d at 879 (explaining there are other avenues of redress to challenge unconstitutional conditions of confinement and that other factors, such as likelihood of obtaining a final order of removal, is better suited for consideration at a bond hearing by an IJ). This Court agrees and adopts the *Lopez* factors to assess whether mandatory detention under § 1225(b)(1) has become unreasonably prolonged as applied to the Petitioner in this case.

[8] In *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit held that the government bears the burden of establishing by clear and convincing evidence that a noncitizen's detention under 8 U.S.C. § 1226(a) is justified. As *Banda* explained, nothing in *Singh* suggests that the analysis regarding the government's burden of proof varies depending on the specific detention statute. *Banda*, 385 F. Supp. 3d at 1107. Instead, in *Singh*, the Ninth Circuit noted "the government ma[de] too much of [a] distinction [regarding § 1231(a)(6) detainees and § 1226(a) detainees] because [r]egardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention." *Singh*, 638 F.3d at 1205 (citing *Diouf v. Napolitano*, 634 F.3d 1081, 1087 (9th Cir. 2011)).

[9] Respondents argue that if this Court were to apply a multi-factor balancing test, the Court "must give weight to [Petitioner's] criminal conduct." (Doc. 10 at 6–7.) Though Respondents allege that Petitioner

## 2. Likely Duration of Future Detention

Second, the likely duration of future detention also weighs in Petitioner's favor. "The Court considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citations and quotations omitted). "When the [noncitizen's] removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Lebedev*, 2026 WL 482733, at *6 (citations omitted). Petitioner initially received a positive credible fear determination and applied for asylum, however, as of September 15, 2025, an IJ ordered the Petitioner removed. *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/ (last visited March 21, 2026). On September 26, 2025, Petitioner appealed the IJ's order of removal to the BIA, and on January 27, 2026, Petitioner filed his appellate brief to the BIA. *Id*. As of the date of this order, that appeal is still pending. *Id*.

Although future events are difficult to predict, the Court finds that the pending appeal before the BIA and possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner. *See Lebedev*, 2026 WL 482733, at *6 (weighing in favor of petitioner on this factor because his asylum application was pending review by the BIA); *Bobokulov Akmal*, 2026 WL 657606, at *7 (weighing in favor of petitioner on this factor because his asylum application was pending review by the Ninth Circuit); *Banda*, 385 F. Supp. 3d at 1119 (weighing in favor of petitioner on this factor because his asylum application was pending review by the BIA and noting that this process may take up to two years or longer); *Padilla*, 704 F. Supp. 3d at 1173 (explaining that petitioners with bona fide asylum claims "face a median time of five

fled from crimes committed in his home country, (Doc. 10 at 2), Petitioner claims that he was "never convicted of a crime in Belize" and that police "fabricated charges" against him because he spoke out against police corruption. (Doc. 1, ¶¶ 24, 25; *see also* Doc. 10-1 at 27–29.) As this Court explained in *Lopez*, factors such as "the nature of the crime committed"—and here whether such crime was committed altogether—is "more suited for consideration at a bond hearing by the immigration judge . . . than for consideration to determine whether detention has become unreasonable." *Lopez*, 631 F. Supp. 3d at 879. While the government certainly has a legitimate interest to protect the public from dangerous individuals and to prevent a noncitizens' flight during removal proceedings, this issue is better suited for an IJ in determining whether to grant release on bond.

to six months for adjudication of their claim by an [IJ], nearly a year for cases appealed to the BIA, and still longer for judicial review").

                3.   <u>Delays in the Removal Proceedings Caused by the Petitioner and the Government</u>

Third, delays in removal proceedings caused by Petitioner and Respondents do not weigh significantly in any one direction. Under this factor, "[c]ourts should be sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (citations and quotations omitted). Evidence that a noncitizen acted in bad faith or sought to deliberately slow proceedings in hopes of obtaining release would weigh against granting relief. *Id*. (citations and quotations omitted).

Respondents argue that Petitioner caused a series of delays from August 26, 2024, to January 22, 2025, because Petitioner requested additional time and continuances to prepare for his asylum proceedings. (Doc. 10 at 2.) Importantly, however, Petitioner did not obtain an attorney until January 13, 2025, (Doc. 1-1, ¶ 2), and therefore was self-represented during the first few hearings. In fact, Respondents acknowledge that Petitioner "requested additional time to find an attorney." (Doc. 10-1, ¶ 10.) A *pro se* litigant asking for additional time to navigate the immigration system and obtain an attorney does not constitute evidence of bad faith. *Saribekyan*, 2026 WL 776031, at *3 ("As there is no allegation or appearance of bad faith, the Court finds that these actions do not significantly weigh against Petitioner."). Respondents further argue that Petitioner's attorney caused further delays by requesting a continuance at the January 22, 2025, hearing. (Doc. 10-1, ¶ 13.) However, such request does not demonstrate bad faith considering Petitioner's attorney did come onto the case until January 13, 2025, and likely needed more time to prepare.

Respondents further argue that Petitioner caused delays "in furtherance of his own goal to seek relief from removal." (Doc. 10 at 6.) However, Petitioner is entitled to raise legitimate defenses to removal, and such challenges do not undermine his claim that detention has become unreasonably prolonged. *See Lebedev*, 2026 WL 482733, at *7 (citations and quotations omitted).

17

Petitioner, in fact, raised a legitimate defense, namely, fear of torture if returned to Belize, which an asylum officer found to be credible. *See id.* ("Petitioner raised a legitimate defense to removal, as evidenced by the fact that the IJ granted Petitioner's application for asylum."); (Doc. 1, ¶ 27.) The fact that Petitioner chose to pursue an asylum application and requested continuances to further that application does not deprive him of a constitutional right to due process, absent some indicia of bad faith or dilatory tactics, which are absent here. *Lebedev*, 2026 WL 482733, at \*7 (citing *Henriquez v. Garland*, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at \*5 (N.D. Cal. June 14, 2022).

Furthermore, Petitioner filed his appeal to the BIA eleven days after being ordered removed, which is timely and an appropriate remedial avenue. *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/ (last visited March 21, 2026); *see Saribekyan*, 2026 WL 776031, at \*3 (finding that petitioner's appeal of the IJ's denial of asylum to the BIA was perfectly legitimate and did not demonstrate bad faith) (citations and quotations omitted).

Even still, Respondents also played a part in causing delays. According to Petitioner, guards at Golden State Annex ignored his requests to access his personal property to obtain key documents and evidence needed for his asylum case. (Doc. 1 at 11–12.) He claims that "[o]nly months later, after he retained *pro bono* counsel who echoed his demands for access to his personal property, did Golden State Annex finally relent." (Doc. 1 at 12.) Such delay would be attributable to the Government, not Petitioner. *See Banda*, 385 F. Supp. 3d at 1120 (finding that EOIR's failure to secure an interpreter for petitioner's immigration proceedings which caused delays in the removal process was attributable to the government and favored granting petitioner a bond hearing).  In conclusion, the Court finds that the factors weigh in favor of granting Petitioner a bond hearing. Thus, the Court **ORDERS**:

1.   The Court **DECLINES** to adopt the Findings and Recommendations issued on November 25, 2025, (Doc. 25).

2.   Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

3.   Respondents' Motion to Dismiss (Doc. 10) is **DENIED,** except the Court grants

Respondents' request to dismiss all unlawfully named officials under 28 U.S.C. § 2241.

4.    Respondents are **ORDERED** to provide the Petitioner with a bond hearing **no later than April 10, 2026**, at which the Government **SHALL** bear the burden of demonstrating by clear and convincing evidence that the Petitioner is a flight risk or danger to the community if not arrested, and Petitioner **SHALL** be given adequate notice prior to the hearing and **SHALL** be allowed to have counsel present.

5.    The Clerk of Court is directed to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated:    **March 22, 2026**

_____
UNITED STATES DISTRICT JUDGE

19